UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN LEE,

                Plaintiff,               Case No. 1:25-cv-1830

v.

                                    Honorable Robert J. Jonker

UNKNOWN SPOHN et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## I.      Relevant Procedural History and Factual Allegations

Plaintiff initiated this action in the United States District Court for the Eastern District of Michigan on April 22, 2025. (Compl., ECF No. 1.) On December 15, 2025, the Eastern District of Michigan partially dismissed the action, dismissing Defendants Reiwbert, Mikat, and Schriver,

and transferred the "claims and Defendants tied entirely to the alleged Carson City Correction[al]

Facility [(DRF)] events" to this Court. (ECF No. 5, PageID.61.) The following DRF Defendants

remain in the case: Sergeant Unknown Spohn, Prison Counselor (PC) Unknown Party #1, Resident

Unit Manager (RUM) Unknown Party #2, Assistant Residential Unit Supervisor (ARUS)

Unknown Party #3, Assistant Deputy Warden (ADW) Unknown Party #4, and Corrections

Officers Unknown Party #5, Unknown Party #6, Unknown Party #7, Unknown Party #8, Unknown

Party #9, Unknown Party #10, Unknown Party # 11, and Unknown Party #12. (Compl., ECF

No. 1, PageID.2–7, 11.) Defendants are all sued in their individual and official capacities. (*Id.*)

In the Eastern District of Michigan's December 15, 2025, opinion and order, the Eastern

District of Michigan summarized Plaintiff's allegations regarding the events at DRF as follows:

> [O]n October 28, 2024, the Michigan Department of Corrections (MDOC) transferred [Plaintiff] to [DRF]. ECF No. 1 at PageID.12. While undergoing medical intake there, Plaintiff allegedly informed Defendant Sergeant Spohn that he was "feeling suicidal." *Id.* Against that backdrop, Plaintiff allegedly asked to be placed in segregation on suicide watch. *Id.* at PageID.12. Defendant Spohn then handcuffed Plaintiff and escorted him toward segregation. *Id.* At the same time, Sergeant Shaw—who is not named as a defendant—became irritated and responded with sarcasm, remarking that Plaintiff had chosen "the perfect time" to become suicidal because Shaw's shift ended in half an hour.[] *Id.*
>
> To process Plaintiff for suicide watch, Shaw started a routine strip search. *Id.* at PageID.12–13. But the sequence soon shifted. Defendant John Doe #1, another corrections officer, approached and began speaking with Defendant Spohn. *Id.* at PageID.13. Defendant Spohn indicated that placing Plaintiff on suicide watch would require him to work past his shift. *Id.* In response, Defendant Doe #1 allegedly advised Defendant Spohn to simply return Plaintiff to his cell. *Id.* Defendant Spohn complied and stopped the search. *Id.* Shortly after that, Defendant John Doe #2 arrived. *Id.* Defendants Spohn and Doe #2 again handcuffed Plaintiff and began escorting him back to his housing unit. *Id.* When Plaintiff stated that he intended to kill himself, Defendant Spohn allegedly dismissed the comment, responding, "[n]o you are not." *Id.*
>
> The encounter escalated as they approached the "1200 Building." *Id.* According to Plaintiff, he saw Defendants John Does #3, #4, #5, and #6—additional corrections officers—and announced that he took multiple psychiatric medications and planned to hang himself once returned to his cell. *Id.* Allegedly, Defendant Spohn urged Plaintiff to "[h]ang [him]self in twenty minutes, on the next shift." *Id.* When they

2

reached the cell, he repeated that he would hang himself with his bedsheet. *Id.* Defendant Spohn allegedly encouraged him, remarking that he was "a burden" on the state. *Id.*

Once inside, Plaintiff tied a noose from his bedsheet, secured it to the bunk's crossbar, and placed it around his neck. *Id.* His cellmate attempted to summon help by pressing an emergency button, but no one responded. *Id.* After roughly twenty minutes, Defendant John Doe #7 allegedly walked by and saw Plaintiff hanging in a semi-conscious state. *Id.* at PageID.14. Defendant Doe #7 called Defendant John Doe #8 for assistance. *Id.* After ordering the cellmate out, Defendant Doe #7 allegedly slammed Plaintiff to the floor and struck him repeatedly in the chest and stomach while Defendant Doe #8 removed the noose. *Id.* According to Plaintiff, the two officers then handcuffed Plaintiff and "dragged" him from the cell. *Id.* Plaintiff alleges that Defendant Doe #7 continued to lift and slam him, causing significant pain to his shoulders and torso. *Id.* Once in the hallway, Defendants Doe #7 and #8 allegedly lifted him by his elbows, aggravating his pain. *Id.* They then began walking Plaintiff to suicide watch. *Id.*

According to the Complaint, the situation deteriorated further on the return to suicide watch. Although the noose remained around his neck, Defendant Doe #7 allegedly tightened it, stuffing additional fabric into the gap between the sheet and Plaintiff's throat and commenting, "[l]et's tighten this up a little bit," before noting, "wow, it[']s already pretty tight." *Id.*

After Plaintiff reentered segregation, staff removed the noose, and medical personnel evaluated him. *Id.* at PageID.15. He was then placed on suicide observation for several days. *Id.* During that period, he claims he was denied hygiene items, clean clothing, showers, and his prescribed medications. *Id.*

Plaintiff was eventually transferred to the Woodland Center Correctional Facility in Whitmore Lake, Michigan.[1] *Id.* There, he discovered that several items of necessary medical equipment—his orthopedic shoes, dentures, hearing aids, and eyeglasses—had not accompanied him from Carson City. *Id.* When Plaintiff attempted to report what had occurred, Defendant Gregory Mikat, the Woodland Grievance Coordinator, allegedly returned Plaintiff's grievance unprocessed and without an identification number. *Id.* When Plaintiff resubmitted it, he was told to direct it to Carson City instead. *Id.* at PageID.16. And his later attempts allegedly met the same fate. *Id.* at PageID.16–17.

---

[1] In Plaintiff's complaint, he states that he was transferred to Woodland Center Correctional Facility on October 25, 2024. (Compl., ECF No. 1, PageID.15.) However, that date appears to be incorrect because Plaintiff states that he was transferred from DRF to Woodland Center Correctional Facility, meaning that he was at DRF before he was at Woodland Center Correctional Facility, and Plaintiff indicates that he arrived at DRF on October 28, 2024. (*Id.*, PageID.12.) Therefore, it appears that Plaintiff was instead transferred to Woodland Center Correctional Facility at some point shortly after his arrival at DRF on October 28, 2024.

(ECF No. 5, PageID.61–63.) In addition to the above factual allegations that the Eastern District of Michigan included in its opinion and order, in the complaint, Plaintiff alleges that while he was on "suicide observation" for an unspecified short period of time at DRF before his transfer to Woodland Center Correctional Facility, "Plaintiff reported the events to Plaintiff's case manager/therapist, the ARUS, assistant deputy warden, resident unit manager, and the chief of therapy QMPH." (Compl., ECF No. 1, PageID.15.) Further, although it is not clear if these events occurred at DRF or at Woodland Center Correctional Facility, Plaintiff alleges that "ADW Doe, RUM Doe, and PC Doe, all violated Plaintiff's rights to redress when they refused to allow a reader writer (an inmate who reads and writes kites, to help inmates who cannot), to write a grievance" regarding the time that "Plaintiff was on suicide watch." (*Id.*, PageID.22.)

Based on the foregoing allegations, Plaintiff raises First Amendment retaliation claims, Fifth Amendment equal protection claims, which the Court construes as Fourteenth Amendment equal protection claims because Plaintiff is a state prisoner and Defendants are employed at a state prison facility, and Eighth Amendment deliberate indifference and excessive force claims. (*See id.*, PageID.21–28.) Plaintiff seeks monetary damages and injunctive relief. (*See id.*, PageID.32.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.   Discussion

### A.   Official Capacity Claims

Plaintiff sues the DRF Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2–7, 11.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has

waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as injunctive relief. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *id.* Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Further, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility typically moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). In the present action, Plaintiff's allegations against the DRF Defendants relate solely to past harm, not future risk of harm. And, Plaintiff is no longer confined at DRF, which is where he avers that Defendants are employed. Thus, Plaintiff's transfer moots his request for injunctive relief.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief may be granted, and his official capacity claims against Defendants will be dismissed for failure to state a claim.

**B.    Defendants Unknown Parties #7, #8, #9, and #10 (Named as John Does #3, #4, #5, and #6 in the Complaint)**

With respect to Defendants Unknown Parties #7, #8, #9, and #10 (named as John Does #3, #4, #5, and #6 in the complaint), Plaintiff's sole allegation against these Defendants is that as Defendants Spohn and Unknown Party #6 (named as John Doe #2 in the complaint) were escorting Plaintiff "back to his housing unit," Plaintiff saw Defendants Unknown Parties #7, #8, #9, and #10 (named as John Does #3, #4, #5, and #6 in the complaint) "standing by the base desk," and "[u]pon going down the stairs to the left lower wing, Plaintiff said as loud as he could, that Plaintiff took multiple psych. [me]ds. and was going to hang himself." (Compl., ECF No. 1, PageID.13.)

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. And, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Plaintiff alleges only that he saw Defendants Unknown Parties #7, #8, #9, and #10 on the main floor of the unit as he walked by them while being escorted by Defendants Spohn and Unknown Party #6, and at some point later, when Plaintiff was on the lower level of the unit, Plaintiff said in a loud voice that he had taken multiple psychological medications and "was going to hang himself." (Compl., ECF No. 1, PageID.13.) Although Plaintiff alleges that he briefly walked by Defendants Unknown Parties #7, #8, #9, and #10 before making the above statements, Plaintiff does not allege that these Defendants actually heard Plaintiff's statements. And, besides briefly walking by these Defendants, Plaintiff does not allege that they had any direct involvement in the events set forth in the complaint. Under these circumstances, Plaintiff has failed to show that Defendants Unknown Parties #7, #8, #9, and #10 (named as John Does #3, #4, #5, and #6 in the complaint) engaged in any active unconstitutional behavior. Therefore Defendants Unknown Parties #7, #8, #9, and #10 (named as John Does #3, #4, #5, and #6 in the complaint) will be dismissed.

### C.    Defendants Unknown Parties #1, #2, #3, and #4 (Named as PC John Doe, RUM John Doe, ARUS John Doe, and ADW John Doe in the Complaint)

Plaintiff's allegations against Defendants Unknown Parties #1, #2, #3, and #4, named as PC John Doe, RUM John Doe, ARUS John Doe, and ADW John Doe in the complaint, are as follows: Plaintiff alleges that while he was on "suicide observation" for an unspecified short period of time at DRF before his transfer to Woodland Center Correctional Facility, "Plaintiff reported the events to Plaintiff's case manager/therapist, the ARUS, assistant deputy warden, resident unit

8

manager, and the chief of therapy QMPH." (Compl., ECF No. 1, PageID.15.) Plaintiff also alleges that at an unspecified time, "ADW Doe, RUM Doe, and PC Doe, all violated Plaintiff's rights to redress when they refused to allow a reader writer (an inmate who reads and writes kites, to help inmates who cannot), to write a grievance" regarding the time that "Plaintiff was on suicide watch." (*Id.*, PageID.22.)

As to Plaintiff's allegation about "report[ing] the events [that occurred at DRF] to Plaintiff's case manager/therapist, the ARUS, assistant deputy warden, resident unit manager, and the chief of therapy QMPH," this allegation is insufficient to state a claim against these Defendants because Plaintiff does not allege that they engaged in any active unconstitutional behavior. *See Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. Indeed, besides this allegation about the action taken by Plaintiff, Plaintiff does not allege any facts about any actions, or lack thereof, by these Defendants.

Further, as to Plaintiff's allegation that at an unspecified time, "ADW Doe, RUM Doe, and PC Doe, all violated Plaintiff's rights to redress when they refused to allow a reader writer," Plaintiff's allegations are also insufficient to state any claim against these Defendants upon which relief may be granted. As an initial matter, Plaintiff does not allege that he needs a "reader writer." In Plaintiff's complaint, he indicates that he later filed grievances at Woodland Center Correctional Facility, and he does not allege that he needed a "reader writer" to file them. Moreover, Plaintiff fails to allege any facts about when he requested access to a "reader writer," let alone any facts about when he asked these specific Defendants for such access and they denied it. In short, Plaintiff asks the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Accordingly, for these reasons, Plaintiff fails to state a claim against Defendants Unknown Parties #1, #2, #3, and #4, named as PC John Doe, RUM John Doe, ARUS John Doe, and ADW John Doe in the complaint, and these Defendants will be dismissed.

### D. Defendants Spohn, Unknown Party #5 (named as Corrections Officer John Doe #1), Unknown Party #6 (named as Corrections Officer John Doe #2), Unknown Party #11 (named as Corrections Officer John Doe #7), and Unknown Party #12 (named as Corrections Officer John Doe #8)

#### 1. First Amendment Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges generally that Defendants retaliated against him at DRF by taking the actions that are set forth above when Plaintiff indicated that he was experiencing a mental health crisis. (*See* Compl., ECF No. 1, PageID.25.) Plaintiff also claims that certain medical items were not transferred with him to Woodland Center Correctional Facility, which he alleges was a retaliatory action. (*See id.*)

However, Plaintiff's retaliation claims are entirely conclusory. It is clear that Plaintiff believes there is a connection between all of the events set forth in the complaint; however, Plaintiff fails to allege sufficient *facts* to suggest that the named Defendants took the above

discussed actions because Plaintiff had engaged in prior protected conduct. *See Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Indeed, when setting out his retaliation claims, Plaintiff does not identify any specific Defendants who took the alleged retaliatory actions. For these reasons, Plaintiff fails to state a First Amendment retaliation claim against Defendants.

### 2.        Fourteenth Amendment Equal Protection Claims

Plaintiff alleges that Defendants "discriminated against Plaintiff by destroying or losing all of Plaintiff's medical equipment," and Plaintiff alleges generally that all of Defendants' actions at DRF violated Plaintiff's equal protection rights.[2] (*See* Compl., ECF No. 1, PageID.24–25.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a

---

[2] When setting out his equal protection claims, Plaintiff also references the Americans With Disabilities Act (ADA). (Compl., ECF No. 1, PageID.24.) However, because Plaintiff specifically identifies the claims that he intends to raise in this suit, and he does not indicate that he intended to bring any ADA claims, the Court does not construe Plaintiff's complaint to raise any ADA claims.

term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff uses the phrase "discrimination" when setting forth his claims, Plaintiff fails to allege any *facts* to support his conclusory assertions. Indeed, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### 3. Eighth Amendment Claims

#### a. Deliberate Indifference Claims: Defendants Spohn, Unknown Party #5 (named as Corrections Officer John Doe #1), and Unknown Party #6 (named as Corrections Officer John Doe #2)

Plaintiff alleges that on October 28, 2024, Plaintiff advised Defendants Spohn, Unknown Party #5 (Corrections Officer John Doe #1), and Unknown Party #6 (Corrections Officer John Doe #2) that he was suicidal, and that despite knowing this, these Defendants returned Plaintiff to his housing unit rather than place him on suicide watch. Although Plaintiff has by no means proven his Eighth Amendment deliberate indifference claims against these Defendants, the Court will not dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Spohn,

12

Unknown Party #5 (Corrections Officer John Doe #1), and Unknown Party #6 (Corrections Officer John Doe #2) at this early stage of the case.

> **b.**    **Excessive Force Claims: Defendants Unknown Party #11 (named as Corrections Officer John Doe #7) and Unknown Party #12 (named as Corrections Officer John Doe #8)**

Plaintiff alleges, *inter alia*, that after Defendant Unknown Party #11 (Corrections Officer John Doe #7) reported to Plaintiff's cell after Plaintiff acted on his suicidal thoughts, this Defendant struck him repeatedly in the chest and stomach and slammed Plaintiff to the floor. (Compl., ECF No. 1, PageID.14.) Plaintiff also alleges that once they were outside of Plaintiff's cell, Defendants Unknown Party #11 (Corrections Officer John Doe #7) and Unknown Party #12 (Corrections Officer John Doe #8) lifted him by his elbows, aggravating his pain. (*Id.*) Further, Plaintiff alleges that at a later point, Defendant Unknown Party #11 (Corrections Officer John Doe #7) tightened the noose that Plaintiff had put around his neck. (*Id.*)

At this point in the proceedings, the Court must take Plaintiff's allegations as true and in the light most favorable to him. Under these circumstances, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Unknown Parties #11 and #12 (Corrections Officers John Does #7 and #8).

## IV.    Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Unknown Parties #7, #8, #9, and #10 (named as John Does #3, #4, #5, and #6 in the complaint) and Defendants Unknown Parties #1, #2, #3, and #4 (named as PC John Doe, RUM John Doe, ARUS John Doe, and ADW John Doe in the complaint) will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Spohn, Unknown Party #5

13

(named as Corrections Officer John Doe #1 in the complaint), Unknown Party #6 (named as Corrections Officer John Doe #2 in the complaint), Unknown Party #11 (named as Corrections Officer John Doe #7 in the complaint), and Unknown Party #12 (named as Corrections Officer John Doe #8 in the complaint): (i) official capacity claims, (ii) First Amendment retaliation claims, and (iii) Fourteenth Amendment equal protection claims. Plaintiff's individual capacity Eighth Amendment deliberate indifference claims against Defendants Spohn, Unknown Party #5 (Corrections Officer John Doe #1), and Unknown Party #6 (Corrections Officer John Doe #2), and Plaintiff's individual capacity Eighth Amendment excessive force claims against Defendants Unknown Party #11 (Corrections Officer John Doe #7) and Unknown Party #12 (Corrections Officer John Doe #8) remain in the case.

An order consistent with this opinion will be entered.

Dated:    March 30, 2026                              /s/ Robert J. Jonker
                                                       Robert J. Jonker
                                                       United States District Judge